IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 00-6254-CR-ROETTGER
MAGISTRATE: SELTZER

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL ZOYES,

    Defendant.

_____/



**DEFENDANT MICHAEL ZOYES' SENTENCING MEMORANDUM IN RESPONSE TO COURT'S INQUIRY AT RE-SENTENCING PROCEEDING**

The Defendant, Michael Zoyes, by and through his undersigned counsel, respectfully files this sentencing memorandum and response to the Court's inquiry made during the re-sentencing proceedings conducted in part on October 22, 2002, and, states the following:

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

1. This Court is well-familiar with the fact that, pursuant to a written plea agreement, Michael Zoyes pled guilty to one count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. secs. 371, 1341 and 1343.

2. The original sentencing proceeding was held before this Court on June 19, 2001, at the conclusion of which this Court sentenced him to a term of imprisonment of 30

1



months, and ordered him to pay $7,547,730.58 in restitution.

3. In accordance with his sentence of imprisonment, Mr. Zoyes voluntarily surrender to his designated correctional facility, FCI Miami, Camp, on October 19, 2001.

4. An appeal was filed to the Eleventh Circuit Court of Appeals, in which Zoyes appealed the restitution finding made by this Court.

5. On **August 2, 2002**, the Court of Appeals entered its decision, and VACATED and REMANDED the case for re-sentencing, "[I]n a manner not inconsistent with [their] opinion." A copy of the Eleventh Circuit Court's decision is attached hereto as Exhibit A.

6. The Eleventh Court clearly agreed with Defendant's argument that there was a lack of sufficient evidence to support this Court's order of restitution. The Eleventh Circuit Court further recognized that the revenue figure (which was calculated as the $7,547,730.58) and the loss figure were *not* interchangeable, since it was conceded and agreed to by both parties that the "victims" purchased something of value. The Court of Appeals further directed this District Court to use the correct formula for calculating loss found at U.S.S.C. sec. 2F1.1(b).

2

7. The Court of Appeals went further and also since the length of Mr. Zoyes' prison sentence was directly related to the restitution determination, requiring that his sentence of imprisonment also be vacated and that he be re-sentenced.

8. This Court commenced the re-sentencing hearing on October 22, 2002. During the hearing, the government presented a single witness, FBI Special Agent Dave Roberts, who described the methodology used by the government to calculate what the government concluded was the amount of loss suffered by the victims' in this case.

9. Specifically, Roberts testified and the AUSA argued that the amount of loss in this case attributable to Mr. Zoyes should be arrived at by calculating the *amount of money paid by Mr. Zoyes' companies to the manufacturer of the product (weight-loss pills, vitamins) and thereafter subtracting that amount of money from the total revenue earned by the defendant's companies.*[1] The total revenue earned in the aggregate by the companies was $7,547,730.58.

10. The undersigned disputed the government's formula for calculating the loss to the victims in this case by the fraud. The undersigned argued that, in accordance with the requisite Sentencing Guideline provision 2F1.1(b), and

3

---

[1] The companies were: Doctors Choice, Vange, Inc.(Option One), Quantum Force, and NU U Cosmetics. The total amount of money paid by the companies' to the manufacturer was $877,348.89. Of this amount, $849,910.30 was paid out by Doctors Choice.

Commentary 8(a), the *loss* to the victims' should be established as the ***difference between the amount paid by the victim for the product and the amount for which the victim could re-sell the product received.***

11. Here, the fraud by Mr. Zoyes was committed when he and his co-conspirators misrepresented the ***margin of profit to be earned on the sale of the product when the victims ultimately went to re-sell the product.*** In other words, the telemarketing scheme here involved the communication to prospective purchasers of the product that the product being bought from Zoyes' companies could be re-sold for much more of a profit than was actually the case.[2]

12. The undersigned also argued that **no loss was actually suffered by the victims in this case**. In making this argument, the undersigned relied on the prior testimony of several victims of this telemarketing scheme, who testified at an injunction hearing before a United States District Judge in the Southern District regarding the subject-matter and nature of the fraud. Specifically, these witnesses testified that they purchased a product that had value, and later re-sold the product, however, sold it for less of a profit margin than what was represented to them.

4

---

[2] The Appeals Court correctly acknowledged in its August 2, 2002 decision that the parties **agreed** that the "...[D]efendant's did not misrepresent the value of the goods; they misrepresented the speed at which the product could be sold." Obviously, the government agreed that this product had value.

## ARGUMENT AND MEMORANDUM OF LAW

The fraud guideline, U.S.S.G. section 2F1.1 allows for enhancement of a defendant's sentence, *if* there is a proven loss suffered by the victims of the fraud, and the loss exceeds $2,000.00. The sentencing enhancement from the guideline base offense of six (6) is thereafter based on increments of the amount of the loss, with the greater the loss requiring a higher offense level. see U.S.S.G. sec. 2F1.1(b)(1).

This section of the Sentencing Guidelines applies to a great variety of fraud cases. The "loss" under section 2F1.1 is a specific offense characteristic, which is intended to measure the actual, attempted, or intended harm of the offense, and, this measure of harm focuses on the victim's loss. see United States v. Wilson, 993 F.2d 214, 217 (11th Cir. 1993). The sentencing judge must make a reasonable estimate, given the available information, of what the loss or harm is caused by the fraudulent scheme.

There are different types of fraud--one such type is the "contract fraud", where the perpetrator of the fraud, although fraudulently obtaining the contract, intends to perform the contract, and causes no loss to the victim. see e.g. United States v. Kopp, 951 F.2d 521 (3d Cir. 1991). Indeed, the various frauds are separated by the "intent" element of the crime--contract frauds involve the intent to obtain the contract through fraud, but, the further intent

to perform on the contract, and, there is no resulting harm caused.

Defendant Zoyes submits that the fraud committed in his case is a "contract-type" fraud, where, the "contract" (the sale of the "product") was obtained by fraudulent inducements (i.e., that the victim's would make more of a profit than what they actually made), but, no loss was intended, and no loss was actually suffered by the purchasers. And, in fact, the product purchased had some value which has already been agreed to and conceded by the government.

A civil lawsuit was filed by the Federal Trade Commission against Southeast Necessities Corporation, et. al, in case number 94-6848. Attached hereto as **Composite Exhibit B** are the excerpted transcript[3] portions of the two (2) day preliminary injunction hearing held before The Honorable Daniel T.K. Hurley.[4] The following was established during the hearing: The product purchased had value, and was not defective; 2) the customers received the product that they paid for; 3) the product is approved by

6

---

[3] The entire transcript of these proceedings are found in the District Court file as original Exhibits to the previously filed sentencing objections, filed by the Defendant prior to his initial sentencing proceedings. They are further incorporated herein by reference.

[4] The FTC sought to enjoin future business of Allstate and Dr's. Choice based on allegations of misrepresentation and fraud in procuring purchasers of distributorship products.

the federal drug administration; and, 4) there was no evidence that victims suffered any loss.

For example, **Vickie Larson**, a witness for the FTC, testified that she paid $10,000 for 30 Dr. Choice displays. The product, which was bottles containing either a weight loss formula, an energy boost, or a multiple vitamin, was to be sold from the stores where she had her displays at $14.99 per bottle. The store would receive $4.99, and she would receive the balance. Of the balance, she made a $4.50 profit on each bottle sold. (Her cost for each bottle was $5.50) She only sold for about three (3) months, and did not sell all of the bottles. She averaged about one (1) bottle a week in sales from each of her sale locations. She testified that, during the three (3) months she sold the product, she made about $250.00 to $300.00 profit. she agreed that she still was going to sell the product, but, thought that she would make a greater profit in a shorter period of time.[Tr.Vol.1:38-76]

Another witness, **Terry Saeger**, testified for the plaintiff. Mr. Saeger purchased 60 displays and products for $17,300.00. He agreed that the product had value, and, was enthusiastic about the product. He said that his gross sales for the few months he had been selling was $4,000.00. He expected to make a profit if he continued the business. Mr. Saeger agreed that, for the 400 units of product he had already sold, he did, in fact, make a profit of $2,000.00,

7

since he paid $2,000.00 for the 400 units, and, his gross sales were $4,000.00.[Tr.Vol.1:170-76]

Plaintiff's witness **Michael Moore**, another purchaser of Dr. Choice products, testified that he was happy with the product, and, anticipated that he would be profitable in the business. [Tr.Vol.2:368-71;378-88][5]

Summarizing the witness testimony, it appears that the "victim's" received value for their purchase, and, the product had value and was being sold. There was no established, identifiable loss to any victim's.

This case involved the fraudulent procurement of a contract. The Sentencing Guidelines provide for a "treatment" of "Loss" cases of fraudulent procurement of a contract, which is found at Application Note 8 of U.S.S.G. sec. 2F1.1. This is the applicable sentencing guideline provision. This Court must determine whether there was an actual loss or intended loss, and, whether the "victims" are truly victims as defined by the guidelines. If there is no actual or intended loss, there should be no enhancement of the base offense level. see e.g., United States v. Tatum, 138 F.3d 1344 (11th Cir. 1998). Moreover, the individuals who receive a "return" or break even on

---

[5]All of the testifying Plaintiff's witnesses agreed that they could receive their money back if they were not satisfied with the product or the business prospects.

their "investment" are not "victim's" for purposes of section 2F1.1. E.g. United States v. Orton, 73 F.3d 331 (11th Cir. 1996).

Based on the foregoing, Defendant Zoyes suggests that his base offense level should be a level six (6), and the adjusted offense level of ten (10), which allows for a four (4) level upward adjustment for role in the offense pursuant to U.S.S.G. sec. 3B1.1(a).[6]

Defendant Zoyes further agrees that he is entitled to a reduction in his offense for his acceptance of his responsibility, this pursuant to U.S.S.G. sec. 3E1.1(a).[7]

In conclusion, Zoyes' sentencing guideline range, based on a total offense level of 8 and a criminal history category of IV is 10 to 16 months imprisonment.

---

[6] Pursuant to U.S.S.G. sec. 2F1.1(b)(2), the base offense level may be increased by two (2) levels if the offense involved (A) more than minimal planning, or (B) a scheme to defraud more than one victim. However, the Defendant submits that he cannot be punished duplicitously as both a leader in the offense under section 3B1.1 and if the offense meets either of the criteria described in section 2F1.1(b)(2). see United States v. Romano, 970 F.2d 164 (6th Cir. 1992).

[7] Where the adjusted offense level is less than 16, the defendant's offense level can only be decreased by two (2) levels instead of three (3).

WHEREFORE, given the foregoing, it is respectfully requested that this Honorable Court re-sentence Mr. Zoyes within the correctly calculated guideline range of 10 to 16 months imprisonment.

Respectfully submitted,

**DANIEL H. FORMAN, P.A.**
1401 Brickell Avenue.
Suite 800
Miami, Florida  33131
Telephone (305) 577-8888

By _____
    DANIEL H. FORMAN, ESQ.
    Florida Bar No.229261

**MARISA TINKLER MENDEZ, P.A.**
901 Ponce deLeon Blvd.
Suite 304
Coral Gables, Florida  33134
Telephone (305) 444-3747

By _____
    MARISA TINKLER MENDEZ, ESQ.
    Florida Bar No. 586455

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing emergency appeal of the District Court order denying bond was delivered by mail this 8TH day of November, 2002 to the Office of the United States Attorney, and Assistant United States Attorney Kathleen Rice, 500 East Broward Blvd., 7th floor, Ft. Lauderdale, Florida 33301.

By _____
    MARISA TINKLER MENDEZ ESQ.

10

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 0 2 2002
THOMAS K. KAHN
CLERK

No. 01-13475
Non-Argument Calendar

D.C. Docket No. 00-06254-CR-NCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL ZOYES,

Defendant-Appellant.

Appeal from the United States District Court for the
Southern District of Florida

(August 2, 2002)

Before BIRCH, CARNES, and HULL, Circuit Judges.

PER CURIAM:

EXHIBIT A

Michael Zoyes pled guilty to one count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §§ 371, 1341, and 1343, and was sentenced to serve a prison term of 30 months and to pay restitution in the amount of $7,547,730.58. Zoyes appeals the restitution award. He argues that the district court failed to make any factual findings to support the $7,547,730.58 figure, so his sentence should be vacated. Because the inquiry into the amount of the victims' loss may also affect the length of Zoyes's prison term, we VACATE the entire sentencing order and REMAND to the district court for resentencing.

Zoyes and his co-defendants advertised a business opportunity to distribute nutritional supplements. According to the advertisements, a person could make thousands of dollars distributing multi-vitamins, energy boosters, and weight loss products. Zoyes and his co-defendants gave out the names and numbers of "references" who could confirm the potential for success in selling the products. These references were not and had never been distributors; instead, they were paid to make false representations regarding the amount of income a distributor could expect to generate. Zoyes pled guilty to his role in the fraud.

Zoyes appeals the district court's order of restitution, which we review for the abuse of discretion. United States v. Liss, 265 F.3d 1220, 1227 (11th Cir. 2001). For crimes which fall under Title 18 of the United States Code, a court

may order restitution pursuant to 18 U.S.C. § 3663. The amount of restitution is based on "the amount of the loss sustained by each victim as a result of the offense." 18 U.S.C. § 3663(a)(1)(B)(i)(I). The amount of the loss is researched by a probation officer and included in the presentence investigation report ("PSI"). 18 U.S.C. § 3664(a). If the defendant objects to the amount listed in the PSI, then the prosecution must prove the amount of the loss by a preponderance of the evidence. 18 U.S.C. § 3664(e).

Then the court "must make factual findings sufficient to support the government's claim of the amount of fraud loss attributed to a defendant in a PSI." United States v. Cabrera, 172 F.3d 1287, 1294 (11th Cir. 1999). In this case, the court made no findings with respect to the amount of restitution. Instead, the court repeated the figure recommended by the probation officer in the PSI.[1] Because the district court did not find the facts necessary to award restitution, we VACATE the restitution award.

---

[1] It appears that the PSI calculation was made in error. The figure of $7,547,730.58 represents the revenue earned by the defendants. Zoyes argues persuasively that the revenue figure and the loss figure are not interchangeable because the victims purchased something of value. The government conceded as much: "There is no doubt in my mind at this point that there was value to the energy boost product, to the weight loss product." R4-6-7. Both parties agreed that the defendants did not misrepresent the value of the goods; they misrepresented the speed at which the goods could be sold. See id. at 7. The $7,547,730.58 figure, therefore, overstates the victims' loss. Since the product purchased by the victims "was not totally worthless," the district court should subtract the value of the goods from the revenue earned by the defendants in calculating the amount of the victims' loss. See United States v. Snyder, 291 F.3d 1291, 1296 (11th Cir. 2002).

Although Zoyes does not appeal his prison term, its length may be related to the award of restitution. Under the Sentencing Guidelines in effect at the time Zoyes was sentenced, a defendant's offense level is based in part on the amount of money lost by the victims of the fraud. U.S.S.G. § 2F1.1(b)(1)(2000). The defendant's offense level, coupled with his criminal history category, dictates the guideline range for the defendant's prison term. Thus the inquiry into the amount of money lost by the victims affects two calculations: (1) the amount Zoyes owes in restitution, and (2) the length of time Zoyes spends in prison.

According to the probation officer, the district court determined that the victims' loss fell between $5 million and $10 million, so Zoyes's offense level should be increased by 14 levels. See U.S.S.G. § 2F1.1(b)(1)(O). This increase would have resulted in a sentence above the statutory maximum of 60 months. See 18 U.S.C. §§ 371, 1341, and 1343. The district court indicated that the starting point for calculating Zoyes's sentence would be the maximum prison term, R4-11, and then granted the prosecution's request for a downward departure based on substantial assistance.[2]

It is possible that the recalculated amount of the victims' loss may not

---

[2] Our opinion does not implicate the district court's decision to grant the departure. As such, the prosecution's request for a downward departure should be considered pending when the district court resentences Zoyes.

reduce Zoyes's offense level. It is also possible that the recalculated amount may reduce his offense level, but the corresponding sentencing range will still fall above the statutory maximum. To the extent that the recalculated amount of the victims' loss brings Zoyes's sentencing range below the statutory maximum of 60 months, the district court should recalculate the length of Zoyes's prison term.

VACATED and REMANDED for resentencing in a manner not inconsistent with this opinion.

# NOT

# SCANNED

## PLEASE REFER TO COURT FILE