UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6254-CR-ROETTGER

UNITED STATES OF AMERICA )
)
)
vs. )
)
)
MICHAEL ZOYES )
_____)

## GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW, the United States of America, by and through the undersigned Assistant United States Attorney, and hereby files its sentencing memorandum as directed by this Court on October 22, 2002. As set forth herein and as established at the evidentiary hearing before this Court, the Government respectfully requests that the Court find that the applicable amount of the loss is $6,670,380.69. The Government further requests that the defendant, Michael Zoyes, be sentenced to the same term of imprisonment, 30 months' incarceration, previously imposed by this Court.

The instant matter was remanded by the Eleventh Circuit Court of Appeals to this Court for a determination as to the proper amount of the loss sustained by victims of the fraud perpetrated by the defendant and others. Originally, the District Court had found that the amount of the loss was $7,547,730.58. In its remand, the Eleventh Circuit directed the District Court to "subtract the value of the goods from the revenue earned by the defendants in calculating the



amount of the victims' loss."

In support of his motion, Zoyes claims that the Court of Appeals "determined that the length of Mr. Zoyes' prison sentence was directly related to the restitution determination." This claim, however, is simply not true. The Court of Appeals made no such determination; finding instead that the ultimate term of imprisonment may or may not be impacted by the amount of the loss. It is the Government's position that the defendant's sentence is not impacted by any change in the loss as the new loss figure falls within the same offense level in which the defendant was previously placed.

The defendant concludes that the applicable guideline range should be 10-16 months as there was no loss suffered by the victims in this case. Specifically, Zoyes argues that the instant fraud was "contract fraud," as the defendant and others intended to perform the contracts which they made with the victims. Thus, the only fraud was that the defendant misrepresented "the margin of profit to be earned on the sale of the product;" that is, that the defendant misrepresented the quality of a consumer product. *See U.S.S.G. 2F1.1, note 7(a) (1997).* Consequently, the loss amount should be arrived at by calculating the difference between the amount paid by the victim for the product and the amount for which the victim could resell the product.

The scope of the fraud in this case, however, cannot be adequately addressed by using Zoyes' suggested calculation. The defendant's fraudulent acts were not, as the defense claims, limited to a "misrepresentation of the quality of the vitamins." Rather, the defendant and his co-conspirators misrepresented the quality of locations to be used for placement of the displays; in some cases, they simply failed to provide any locations for placements; the defendant and his co-

conspirators used false references to convince potential victims that they would make a substantial amount of money from the sale of the vitamins; and the defendant and his co-conspirators did not respond to efforts by the victims to return the vitamins or otherwise recoup their losses. The end result of all of these fraudulent acts was that a large majority of the victims in this case were simply unable to sell the vitamins. Moreover, as evidenced by the boxes of vitamins found at the defendant's business, many victims who had purchased vitamins never even received them and were never given a chance to sell the product.

That the fraud was more extensive than represented by the defendant is exemplified by the testimony of Vickie Larson in the civil proceeding brought by the Federal Trade Commission against the defendant companies. Excerpts from Ms. Larson's testimony are attached to the defendant's sentencing memorandum. These excerpts fully support the Government's assessment of the fraud in this case and negate the defendant's calculation of the loss. This was not a simple case in which the margin of profit was simply under-represented. Rather, the defendant and his co-conspirators engaged in other fraudulent conduct. For example, Ms. Larson details how she was sent locations for the displays that had never been approved by store owners; when she tried to call the defendant companies for assistance, none was provided; out of the thirty locations promised by the defendant and his co-conspirators, only eight actually came to fruition; and Larson herself had to find fifteen locations for the products without the promised assistance of the defendant and his co-conspirators. Finally, Ms. Larson testified that she invested $15,000 in the fraudulent scheme, but made only a $250-300 profit.

In calculating the amount of the loss, the Government submits that it has followed the directive of the Eleventh Circuit based upon all available information; that is, the Government

has "subtract[ed] the value of the goods from the revenue earned by the defendants in calculating the amount of the victims' loss." In contrast, the defendant has come up with his own definition of loss to fit within his theory that there was no loss to any of the victims in this case. At the re-sentencing hearing held before this Court on October 22, 2002, the Government presented the testimony of Special Agent David Roberts, Federal Bureau of Investigation. Special Agent Roberts testified that he calculated the loss by subtracting the amount paid by the defendant companies for the vitamins (the value of the vitamins) from the total revenue brought in by the defendant companies. Specifically, bank records from the defendant companies reflected what the defendant companies paid the suppliers for the vitamins. This figure, which is synonymous with the value of the vitamins, was $877,349.89. Subtracting the value of these goods from the total revenue resulted in a loss figure of $6,670,380.69. (Special Agent Roberts further testified that this loss figure was based on the most favorable interpretation of the bank records for the defendant.) Because this loss figure falls squarely within the range for the offense level provided in the Presentence Investigation Report, the defendant is not entitled to any reduction in the offense level. Accordingly, the defendant's term of incarceration should stand as originally imposed.

WHEREFORE, the Government respectfully requests that the Court find that the amount of the loss is $6,670,380.69 and that the defendant be re-sentenced to the term of 30 months imprisonment as previously imposed by this Court.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By: /s/ Kathleen Rice

KATHLEEN RICE
ASSISTANT UNITED STATES ATTORNEY
Florida Bar Number 100765
500 East Broward Boulevard
Seventh Floor
Fort Lauderdale, FL 33394
Tel: (954) 356-7255, ext. 3512
Fax: (954) 356-7336

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by United States mail this 21st day of November, 2002, to: Daniel Forman, Esquire, 1401 Brickell Avenue, Suite 800, Miami, Florida 33131; and Michael Santucci, United States Probation Office, 299 East Broward Boulevard, Room 409, Fort Lauderdale, Florida 33301.

/s/ Kathleen Rice

KATHLEEN RICE
ASSISTANT UNITED STATES ATTORNEY